Case No. 22-5303, Project for Privacy and Surveillance Accountability, Inc., At Balance, v. United States Department of Justice, et al. Mr. Scherer, for the At Balance. Mr. Silverman, for the At Police. Good morning, Counsel. Mr. Scherer, please proceed when you're ready. Thank you. Good morning, Your Honors. The FOIA request here was designed to shed light on an issue of enormous public interest, which is efforts by the nation's intelligence agencies to spy on the very institution, that is, Congress, which is charged with overseeing those agencies' important activities. As in the PETA case, when fairly read, the request here sought not only operational records about the unmasking of particular members of Congress, but also non-operational records, such as policy-related documents, that might bear on such unmaskings. And this Court's decisions, especially PETA, show that a blanket, searchless, GLOMAR response is appropriate not when the existence, vel non, of a mere subset of the requested records is protected by a FOIA exemption. It's only appropriate when the agency carries its burden of establishing with specificity and beyond any factual dispute, as this Court said in the Evans case, that the existence or not of all potentially responsive records is protected. That's the only circumstance in which a blanket GLOMAR response is warranted. Now, in our time together, I'll first explain why this case falls within PETA's rather than another recent decision that happens to bear my name. And second, I'll explain why, if the panel concludes that searchless GLOMAR was properly invoked on these facts, the whole doctrine needs to be reexamined on Bonk. So can you start by just explaining what the — in the Sher case, because it involved largely overlapping facts. I know there were different individuals, but the theories were largely overlapping. And two of the exemptions — the two exemptions that are most principally an issue here were in that case, too. And then the claim that can't have a GLOMAR response without having a search first was fully ventilated in that case. So there's a lot of — a lot of overlap.  And what is it that's left over? Well, and the latter point is really an issue for the en Bonc Court, and I understand that. We're not asking the panel to overrule Sher on that point. Well, there are three fundamental differences between this case and the Sher case. First of all, the Sher decision didn't address the core issue here, which is — which is the PETA problem that we have stressed throughout this case. And that is that the agency's affidavits here reframed and narrowed the requested issue to make it look like any acknowledgement of responsive records would pose a risk to national security or individual privacy, when, in fact, we now know from subsequent FOIA cases and productions in those cases that at least some of the documents that are responsive here, non-operational records, can be provided without raising those concerns. But you just don't — those other FOIA requests had very differently worded requests for information that were read to include — I assume you're referring to your policy documents here. Your FOIA requests in this case, your clients' FOIA requests in this case, are for documents regarding the unmasking of listed persons. Full stop.  We get a lot of listed people, but regarding the unmasking of these persons, how is that not necessarily operational and or investigative? And then you have the same thing, obviously, for the upstream. Well, for the same reason — for the same reason that that wasn't true in the PETA case. The PETA — the requested issue in PETA could have been read as — No, because there you had disclosures that went to the same issue for which the — at which the FOIA request aimed. My point here is that your argument seems to be all about these policy documents, but that arises from a case that involved a FOIA request for correspondence that would include correspondence just from members of Congress to the agency, nothing of the agency's own thoughts or views. You haven't asked here for all correspondence. You haven't said all documents about unmasking. What you've said is all documents about unmasking this list of people, all documents about upstreaming this list of people. What I'm trying to say is I don't — it's phrased nothing like the FOIA request from the district court case that you keep referencing. Well, there are two district court cases. I understand that neither one of those is phrased like that. Actually, the second request is very similar to this one in that regard. And Judge Contreras in that case said, consistent with PETA, that we're required, the agency is required to read the request broadly. The second one is all documents, remember, from a third party in exchange for value of illegitimate information. So from a third party. It's a totally different request. Your request here is only about agency's own records on their own asserted unmasking of a list of people. I think I'm having trouble understanding how this FOIA request leaves room for anything other than documents about these agencies asserted, if they're doing it at all, investigative activities. And if you don't have — if your request is not fairly read to reach any further than that, then arguing about policy documents or non-operational documents isn't going to help with this FOIA request. You can throw in a FOIA request for non-operational documents about these two topics if you want. But the way this one is written, written before those district court decisions came along, I assume, I just don't see how it can get in there. Well, under the law, FOIA requests, as the Court is aware, are to be read broadly. But not beyond their terms. I mean, agencies don't have to go — if you had filed a FOIA request giving me all your unmasking documents about Judge Millett, would they have any duty to say, well, we've got information, we've got some articles about unmasking generically, that wouldn't fit that FOIA request, would it? Or is that your theory? Well, if the request was give me all documents about unmasking of Judge Millett, then documents dealing generally with unmasking of judges would be responsive to that. I didn't say my hypothetical was not unmasking of judges. My hypothetical was a news article about unmasking generically. That would not fall within that FOIA request, would it? If it was on — a news article about unmasking judges, I think, would be. I've done — I'm going to try again. Just about unmasking generically. No identified targets. That would not fall within it, would it? Well, I think it probably would, actually. Really? What's your best case for, in reading FOIA requests broadly, we start striking out all kinds of words and ignore those and start saying, well, they just wanted general information? Well, if there's a —  Again, that's not our request. Our request was — our request dealt specifically with congressmen. So a fair reading of that request would include documents generally about unmasking of congressmen. And, you know, and maybe if it just — Okay. But I thought your argument to me, if I misunderstood it, was it would also include in my hypothetical about unmasking generically? Oh, we got a letter from, you know, a concerned citizen about unmasking generically. I think it could if there were any possible application to unmasking of judges. But, again, that's not our case. That's a closer — that's a closer case, I think. But that's not the case we have here. Because in this respect, the scope of the request, is it meaningfully different from the scope of the request in Cher, in the case Cher? I don't think so. This specific — well, and that raises the second issue. Again, the Cher decision does not address this PETA point. I'm just asking about the scope of the request, though. So, I mean, we assume that the panels of this Court are familiar with decisions of the Court. And I just — I'm wondering whether there would have been something about the framing of the request that would have made that decision. Well, it was — it was — it was different in the sense that it did not — it did not deal with members of Congress. Right. It was different individuals. But in terms of — It was limited to individuals. I'm sorry? Yes. It was limited to individuals. It was — it did not deal with members of Congress. Sure. And I think in the Cher case, we could have — we could have made the PETA point there, but we didn't address it, or at least we didn't address it in the way we're addressing it here. And the Cher decision did not address it at all. And therefore, you know, the Cher decision is not — is not binding on that point, because it was an issue that wasn't decided. And that — and that — that does lead me to the second reason that Cher is different, and that is that, you know, during the Cher argument, Judge Millett may — probably would not remember this, but we had a discussion about some hypothetical situations where the agencies might have documents in their — in their files that they could produce without raising Glomar concerns. And we talked about — you know, we talked about those hypotheticals, but the court in Cher was reluctant to rely on hypotheticals. But now, as a result of the — of Judge Contreras' decision in the PPSA 2 case, we know actually now that there — and this is not disputed by the other side — we know that there are — that there are records in the agency's files that are responsive to this request, because we — because we have them. They're responsive to this request, and they can be provided to us without — without raising Glomar-type concerns. But just so that we're clear, in the district court for this case, where did you argue for non-operational policy documents? Well, in — in both our — in both our motion for summary judgment and in our reply brief, we — we argued that — that our request was not limited to the — to documents about these specific individuals. We — we didn't use the magic word policy documents. That was something coined by — coined by Judge Contreras later. But — but we did make the argument that — that our request was not limited to these particular — particular individuals. Did you use the phrase non-operational? No. I don't think we used that — that particular phrase. But the — but the point was clear. Non-investigative? We — we didn't attempt to identify other types of — other types of non-target-specific documents that — that might have been included. But we did make the general argument that we're not limiting our request to — to records about these particular individuals. Can I clarify one thing? You say your client has already gotten those policy documents from the district court litigation in the other case. Is your argument that you're entitled, in this case, to get another copy of those same documents you already have? Technically, I think we are. But — but the — the reason we're pressing the point is because the — is — is because the scope of the — the scope of our request here is broader in terms of time. And — and so we think there may well be additional documents. I'm sure that someone can ask — file a FOIA request and say, I want these documents. They get them. And then again, a month later, file a FOIA request and say, I want these documents they already have. Yeah. And that's not — that's not what we're doing. I — I mention those documents because they — they are — they are responsive here, and they are illustrative of the type of documents — Do you know if those documents are in, like, the FOIA reading room, the e-reading room, the ones that have already been released in the district court litigation? Are they in the e-reading room? Yeah. Because normally that — that commonly happens. I'm — I'm not sure. I mean, we — we have them. We're obviously not pressing this case just because we want them to give us another copy of the documents. The only relevance of that is not that we know those documents are there and we want to get them. Right. It's that you want to — you want to say that, oh, there's a whole category of things called policy documents or non-operational documents, and we'd like to get those under the umbrella of this very specific FOIA request that we filed. Yes. With — with one caveat, Your Honor, and — and we — we don't know what they call them. But — but we do know from the other litigation that there are entire categories of documents relating to — relating to FISA unmasking that are — that are not limited to target-specific, operational-type documents of the sort that are addressed in the affidavits. And that's the fundamental problem with the affidavits. The affidavits pretend that our — that our request is limited to target-specific, operational-type documents. I'm not sure the verb pretend is very fair, given the — They assume. I mean, as I — I can — we can read the text together. Okay. They assume. And it is unmasking of listed people. Right. And — And so I wouldn't say it's pretend to say that you're interested in information about unmasking listed people. Fair enough. But in — but in that respect, the — the request is very similar to the requested issue in PETA, which — which could, on the same reasoning, have been — have been read to — to include only documents about specific researchers. And this Court held no. It can also be read to encompass more general documents. And so the Court remanded for the agency to look for those. And that's exactly what we're asking for here. Thank you. Thank you, counsel. I'm sorry. Oh, you have another question? Yeah. Yeah. This whole question about markings on the document. Yes. How do you know they didn't happen? I think they said they didn't have them. Well, how did you — Because they — they classified them after the fact. After we — Oh, but how do you know that — I mean, you're not arguing that there weren't subsequent markings. You just say they weren't at the moment of classification. That's your only argument. Yeah. We — we don't know whether they added — whether they added markings later. Okay. So your sole argument — okay. I had then misunderstood. I thought you were doing two arguments, timing and that they hadn't been marked. I — I believe that they admitted that they hadn't been marked, but I can double-check that. At the time. I'm sorry? At the time of classification. I — I believe they have admitted they haven't been marked at all, but I'll double-check that. How would someone — if the information is knowledge, because the executive order addresses the classification not just of documents, but of knowledge. Right. And by some references to when things are in documentary form, applies that things can be, of course, classified. A quarrel — conversation. Without that, how are they supposed to be marked at the time or otherwise? If it's knowledge or a conversation. Well, it's — we're getting into a problem with the — with the whole searchless Clomar doctrine here. That — Oh, no, I'm trying to get — I'm trying to get your understanding of how the — you've made an argument about how the executive order is supposed to work. But how do you apply it, your understanding of what the executive order is requiring, if it's being applied to knowledge? Or if it's easier to think of it this way, we can hypothesize a conversation. Well, no, I think the — I mean, that — that is a problem with the — with the searchless Clomar doctrine, I think. But in addition to that, my — my understanding is that they — that they all — that they retroactively attempted to classify generically without knowing what documents were available, all the documents that might have been responsive. No, I'm going to — I'm trying to talk about the Clomar fact here. You know, the fact of the existence or not of records. That's a fact. If it is a question of knowledge that people have describing a category of documents, it's not itself a document. It's a knowledge about this category of requested documents of harm either way. We have them or we don't. Either way is harmful. That knowledge can be — knowledge can be classified under the executive order, correct? Correct. Okay. And knowledge cannot be marked under the executive order, correct? Well, it could effectively be marked with a memo to the file, for example. Well, that requires a creation of documents. I'm assuming — I'm just assuming, you know, the President and the chair of the conversation, that thing — and they do it in the Situation Room — that thing is classified as a minute of utterance. Okay. And not marked then with a later memo to file, because you won't allow later markings under your reading of the executive order. So how is that — Well, I think they can. So if it's knowledge that is being classified, then a later — if they choose to reduce it to a documentary form, it could be marked. But the executive order doesn't require that. Doesn't obligate everything that's classified to be reduced to documentary form, for obvious reasons, something that might not want to be. Right. I think that's true, Your Honor. Okay. Thank you. Thank you. We'll hear from the government now. Mr. Silverman. Good morning, Your Honors. May it please the Court, Bradford Silverman for the United States. This Court, about a year and a half ago, addressed virtually the same facts and the same case presented in Cher v. Department of Justice. That case involved a materially identical FOIA request. There were distinctions, but none that are relevant here. Some different individuals, although some of them actually were the same, and a different number of individuals. But the same type of FOIA request for the same type of information. The case was appealed. It went to this Court. The government made virtually the same Exemption 1 and 3 arguments that the government is making now, and this Court affirmed. Cher is dispositive. It doesn't really leave anything on the table, and I'm happy to answer any questions that the Court has, but Cher really controls here. Is there anything that was withheld under Exemption 7 by the Department of Justice that is not also withheld under Exemption 1, or if Exemption 1 were to be held properly applied here, would there be any need to address the other exemptions? No, Your Honor. Exemption 1 covers everything. Did all of the defendants rely on Exemption 1 below? Yes, Your Honor. Not everyone relied on Exemption 3, but Exemption 1 covers the waterfront, right? That's exactly right. Everyone, but I believe the National Security Division relied on Exemption 3, but everyone relied on Exemption 1. When a glomar is invoked as it was here, and the argument is we don't even have to search, so a categorical glomar, what is the test we're supposed to apply? If someone can hypothesize a document or two that, in their view, would fall within the scope of their request but would not be properly, if I can make it a verb, glomared, is that sufficient to foreclose a categorical use of glomar, or what is the test? How much do you have to show, if you read the FOIA request, how much do you have to show is excluded to make a complete non-search and categorical glomar appropriate? So what you have to show is that you basically have to make a logical or plausible showing that the mere fact of whether or not responsive records exist would itself be classified. One hundred percent. So if one could hypothesize a single document or two that would not be eligible for glomar, would not implicate those interests, then it's improper? No, Your Honor. That's what I'm trying to get at because I think your answer sounded like if when you read it, there's nothing in there that can be answered. Their argument is, well, if you read it this way, there could be something. And your argument seems to be, we've given a logical explanation for why. If you read it our way, there's nothing there. And I'm trying to figure out what to do in between, if we could think of something. Well, the way I think about it is, so first, the government makes a logical or plausible showing that the fact, the answer to the glomar question, in a sense, would itself be exempt. And then the answer to the request for documents would require revealing the glomar fact. Yes, exactly.  And then the unanswered glomar question is that the question that's asked, that is the Yes. Would necessarily, would categorically, would 90% of the time reveal information the government can neither confirm nor deny? In measuring the persuasiveness, the sufficiency of the government's showing, then the court does not consider hypothetical, tangential, possible documents. Well, I'm not sure what that means, though. Go ahead and finish your sentence.  Oh, no. In Knight First Amendment Institute, this court was characterizing its previous decision in Wolfe. But in, so in, I need to discuss Wolfe first, then I'll get quickly to Knight. In Wolfe, this court affirms an exemption one glomar response involving classified information. Then later in Knight First Amendment Institute, the court was discussing what it had done in Wolfe. And there, the court noted, approvingly, that in determining that the government had bet its burden back in Wolfe, the court did not need to consider hypothetical documents. There were one or two examples. I can't remember exactly what they were right now. But the appellant in Wolfe had said, well, maybe there is this. And in Knight, the court said it was appropriate to affirm the glomar response without need to consider this hypothetical document. So does that, I'm just trying to read that alongside Peter. So on Peter, you had official government statements that were pointed to, which obviously is different in this case. But based on those official public statements, the court said, well, there seems to be a category of documents that could hypothesize that there could be such documents that would be covered by that FOIA request. And so the one knows, of course, it's going to be hypothesized until the agency does the search. But it was based on this external information. And so that was sufficient. Is your position that it's only if there's sort of expressed governmental acknowledgments or statements out there that can be pointed to that you can sort of unravel the glomar and say there may be a subcategory that can be released? Because you can't have hypotheticals, but you can hypothesize that there could be documents based on things government officials said, or could other things? Similarly, suggest that, in fact, there are documents. So I don't think we're not arguing there's no need to lay down a categorical rule that there must be a government acknowledgment or something like that. I think the key distinction here with PETA is that in PETA, the FOIA request was phrased differently in a way that actually matters here, that made the possible, the hypothetical, I guess the category that this Court identified as to which the response was not proper, made that a more plausible reading of the FOIA request than it issued here. So in PETA, the FOIA request did not seek all records relating to these three researchers. It sought, and I'm paraphrasing here, so this might not be perfect, but it sought essentially all records arising from complaints against these individuals, arising from memoranda, et cetera, having to do with complaints against these individuals. That's not exactly, but it's close enough. And so the Court there said, well, you can look at this and read it to cover not only records relating to the individuals. For example, this Court said, let's say you have someone make a complaint against a particular researcher, and then as a result of that, the agency decides to conduct an investigation that is maybe not limited to or about that particular researcher, but is about the program more generally, some broader problem. You complain about researcher doing X, and the agency says, well, we're not going to investigate the researcher doing X, but let's take a look at whether X is a problem more broadly. And there, under those facts, then it was not just purely speculative that there might be some records about something that is not properly glomorable. Here, in contrast, by the phrasing of the FOIA request, it is in its own terms limited to all records relating to certain individuals. That category that existed in PETA of potential documents that might or might not exist not having to do with individuals just doesn't exist here. So if it had been phrased as all documents, documents, memorandum, blah, blah, blah, blah, about unmasking, including.  And then listed a bunch of those about these people. That would be a very different FOIA request, yes. And then under that, you would at least have to disclose the type of policy documents that were disclosed in the district court litigation that, as I understand, was not appealed. It is. I'm just, you know, we're not saying whether that district court decision was correct or not, but it wasn't appealed, so. That is correct. In that, in the, so I'm going to call that PPSA 3, that was the one. I believe you're talking about the case filed in 2022, also before Judge Contreras. There, the, well, no, actually case number 22, I'm sorry, the 21. The FOIA request, yes. There's the, there's the case, so this case is filed in 2020. That's how I started. Respondents won, and there's a third party documents won. That's the other category. So there's, there's the case filed in 21, and that's the one that the parties sort of primarily discussed in their briefing. It was, came down, the district court decision came down about a week after the district court decision in this case. So there, yes, that FOIA request is phrased very differently than the one here. It is about documents generally not limited to particular individuals. It's concerning the unmasking of congressmen or senators, not the unmasking of A congressman, B congressman, et cetera. So if their FOIA request here was phrased exactly as it is, but it listed, instead of listing the, sorry, 48 individuals, it said each and every member of the House of Representatives and each and every senator, that would be different? It's an interesting question. I think it would be different. I think there's a difference between saying... But if they typed the names of everybody? Well, I think it's a difference between seeking records on individuals, even a large number, even every individual versus senators, representative generally, because seeking records about the unmasking or upstreaming of senators or representatives generally would go to the institution, would go to people who are not currently members of Congress, would go to, let's say you have a request for... Okay, but if they said sitting members of Congress and senators, then your position would be the same as it is in this case. This seems... No, I think that's different. I think saying sitting members would be more like listing a certain number of individuals. I mean, it's still a finite list. It's just a larger list. Exactly, Your Honor. Well, so is former and current members of Congress and senators. It's a finite list. It might be longer again. It's a finite list, but it really goes more to the institution rather than particular individuals. And that's the government's official position? Our official position is that if you have a FOIA request that is about the unmasking or upstreaming of particular individuals, it is difficult to reasonably read this as being broader than those individuals, about unmasking or upstreaming of everyone. Did Scherer really address all of the procedural arguments that are being presented here with respect to classification and timing and marking, et cetera? They gestured toward those arguments below. So I guess what I'm saying is did our decision in Scherer pass upon all of those arguments? You said that Scherer is dispositive, but did Scherer really dispose of each and every argument that's being made here in that regard? Scherer did not address that particular point. I think it's telling that the issue was never raised in Scherer. And arguably, Scherer stands for the proposition that these records, just like the ones that here, were properly classified. So I don't know exactly how you get around that. Okay. Thank you, counsel. Mr. Scherer, we'll give you two minutes for a rebuttal. Thank you very much, Your Honor. I think counsel's argument just illustrates and reinforces that this case is controlled by PETA and is very much like PETA. First of all, counsel mischaracterized the request in the PETA case. And I'm reading from the opinion there. It says that PETA, I'm quoting, requested copies of all official investigative reports, preliminary notes, testimonies, memos, meeting minutes, phone conversations, e-mails, and other materials related to all NIH investigations into complaints filed in 2005 to the President. Could you just remind me what page you're on of the opinion here so I can? Yeah. I'm sorry. It's 539. This is one of the first column under B? Right after B. So by its terms, it could be read to be limited just to documents concerning that particular list of NIH grant recipients. And yet the court appropriately, following the requirements for FOIA requests, read it to also include more general policy documents. I think it's also significant that... If we had a verb after related, instead of said... Related to. Related to prosecuting investigations into these folks. So instead of related now, but just related to, sorry, I'm going to rephrase it. Related to investigating this list of people. Would that be different? Because related to investigations into complaints is different than related to investigating. So we just... Yeah, but I... I'm talking, I'm not disputing what the PETA one said, but if it said related to investigating three specifically named recipients, that would be different. I don't think that would be a material difference, because that also could be... Well, it's different than investigating complaints about somebody. It means your conduct, the agency's conducting an investigation versus they might be investigating someone who sent in a complaint that seems threatening, and that person might be the problem. Yeah, it would be different substantively, but not... But it wouldn't be a difference in principle for what we're... For the point we're discussing here, I think, Your Honor. Well, it would then be solely about investigations of those people, not investigations of complaints, investigations of other people complaining about... It would be a slightly different request, but I think under the approach taken in PETA, the court would have read that request also to include policy documents or non-operational documents related to that topic. That could be argued about PETA, but it would be very... It would be different than the actual PETA request. If it was framed as focused on investigating, related to investigating, or investigating these three people, that would be... You'd have... There'd be arguments. It would be a somewhat different request, and probably different kinds of documents would be responsive, but the principle, I think, would still control in that hypothetical.  I just want to clarify one thing. Do you agree with the government that if the documents in this case, or if the Glomar claim could be upheld under Exemption 1 alone, that there's no need to address the other exemptions? I know you don't think it should be. And obviously, if it can't be under Exemption 1, then we have to go through all the different ones, because not everyone did Exemption 3. Obviously. But is that right? That if... And you've got your arguments about Exemption 1. We talked about some of those. Yeah, I think that's probably right. Okay. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Thank you.
judges: Srinivasan; Millett; Wilkins